N br

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:26-CR-60-SCM-EBA**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**EDGAR HERNANDEZ-DURON** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 3 of the Indictment, charging violations of 21 U.S.C. § 846, conspiracy to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine (Count 1); and 8 U.S.C. § 1326(a), illegal re-entry after prior deportation or removal. The Defendant also admits the Forfeiture Allegations of the Indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2.

2. The essential elements of Count 1 are:

(a) First, that two or more persons conspired, or agreed, to knowingly or intentionally possess with intent to distribute a mixture or substance containing a detectable amount of cocaine;

(b) Second, that the Defendant knew of the conspiracy and its objects, aims, or goals;

(c) Third, that the Defendant joined the conspiracy with the intent that at least one of conspirators engage in conduct that satisfies the elements of possession with intent to distribute a mixture or substance containing cocaine; and

(d) Fourth, that the quantity of a mixture or substance containing a detectable amount of cocaine was 5 kilograms or more based on the Defendant's own conduct or the conduct of coconspirators that was reasonably foreseeable to him as a member of the conspiracy.

3. The essential elements of Count 3 are:

(a) First, that the Defendant was an alien, that is, a person who is not a natural born or naturalized citizen of the United States;

(b) Second, that the Defendant had previously been deported or removed from the United States;

(c) Third, that the Defendant knowingly re-entered and was found in the United States; and

(d) Fourth, that the Defendant did not have the consent of the Attorney General or the Secretary of the Department of Homeland Security to apply for re-admission to the United States since the time of his previous deportation or removal.

4. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) Law enforcement, including the DEA, FBI, HSI and state agencies, began a joint investigation of Marion Pinder ("Pinder") for drug trafficking. Law enforcement identified an address on Winthrop Drive, Lexington, Kentucky as Pinder's residence.

(b) On April 20, 2026, law enforcement conducted surveillance on the above-referenced address on Winthrop Drive. At approximately 7:05 pm, investigators observed a Dodge Ram truck with a camper shell backed into the driveway of the Winthrop residence. Within the open garage, investigators observed Pinder meeting with two Hispanic males, identified as Jesus Rodriguez ("Jesus") and Santiago Rodriguez ("Santiago"). At

approximately 7:14 pm, investigators observed a black Ford Explorer arrive in front of the Winthrop residence. A Hispanic male, identified as Edgar Hernandez-Duron ("Duron") exited the front passenger seat of the Ford Explorer and approached the residence as the Ford Explorer departed. Duron shook hands with Santiago and Pinder.

(c) Investigators then observed Jesus crawl from the bed of the Dodge Ram and exit the vehicle. Jesus and Santiago then transported a red cooler from the tailgate of the Dodge Ram into the open garage door of the residence where Pinder remained. Once Pinder, Jesus, Santiago, and Duron were inside the garage, the garage door closed.

(d) At approximately 7:33pm, the garage door reopened. Investigators observed Jesus and Santiago emerge from the garage and shake hands with Pinder and Duron. Santiago then entered the driver's seat of the Dodge Ram and Jesus entered the vehicle on the front passenger side. The Dodge Ram then pulled away from the residence.

(e) Investigators maintained surveillance on the Dodge Ram as it traveled to a Hampton Inn located at 453 East Brannon Road, Nicholasville, Kentucky. At approximately 7:42 pm, the Dodge Ram stopped and Jesus exited the passenger side of the vehicle and entered the hotel's lobby. A short time later, Jesus returned to the vehicle. The Dodge Ram then traveled to the hotel's rear parking lot. Jesus and Santiago then exited the Dodge Ram and entered the hotel via a rear entrance. At approximately 8:02 pm, Jesus and Santiago exited the hotel and approached the Dodge Ram. Investigators made contact with Jesus and Santiago. A subsequent search of the Dodge Ram revealed a toolbox in the bed of the truck with a false bottom. Within the false bottom, investigators located and seized, as confirmed by lab testing, 26,752 grams of cocaine, packaged in 30 bricks.

(f) When the Dodge Ram left the Winthrop residence, investigators observed Pinder and Duron place the same red cooler that Jesus and Santiago had previously carried into the garage from their Dodge Ram into a Jeep Compass. The Jeep Compass then drove away, with Pinder driving and Duron in the front passenger seat. The Jeep Compass drove to a parking lot about a mile away and parked in the middle of the lot. Law enforcement attempted to conduct a traffic stop. Upon activation of emergency lights by law enforcement vehicles, Pinder and Duron fled the Jeep Compass on foot and were quickly apprehended. In plain view in the front passenger seat area of the Jeep Compass was a brick of suspected cocaine.

(g) Law enforcement executed a search warrant on the Winthrop residence later that same day. In the garage, investigators located two trash bags, one containing 9 bricks of suspected cocaine and the other containing 6 bricks of suspected cocaine. Another brick of suspected cocaine was located on a table near the trash bags.

(h) The Defendant admits that he knowingly and intentionally conspired and agreed with at least one other person to distribute, or possess with intent to distribute, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in Lexington, KY and Nicholasville, KY, in the Eastern District of Kentucky.

5. As to Count 3, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant is a native and citizen of Mexico. The Defendant was found in Lexington, KY and Nicholasville, KY on April 20, 2026.

(b) The Defendant was previously removed from the United States to Mexico on or about September 13, 2019.

(c) The Defendant knowingly entered the United States and was found in Lexington, KY and Nicholasville, KY, in the Eastern District of Kentucky, on April 20, 2026.

(d) The Defendant did not have the consent of the Secretary of the Department of Homeland Security or the Attorney General to re-enter the United States or to apply for readmission to the United States since the time of his previous deportation or removal.

6. The statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than life, a fine of not more than $10,000,000, and a term of supervised release of not less than 5 years. The statutory punishment for Count 3 is not more than 2 years imprisonment, a $250,000 fine, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 per count applies, for a total of $200, and

the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

7. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. These recommendations do not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all conduct described in ¶ 3 and the provided discovery materials.

(c) Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(4), the base offense level for Count 1 is 32 because the offense involves between 15 kilograms and 50 kilograms of cocaine.

(d) If the Defendant meets all the criteria at U.S.S.G. § 4C1.1(a), then he will be eligible for a 2-level reduction to the offense level.

(e) If the Defendant meets all the criteria at U.S.S.G. § 5C1.2(1)-(5), then he will be eligible for a 2-level reduction to the offense level pursuant to U.S.S.G. § 2D1.1(b)(18).

(f) Pursuant to U.S.S.G. § 2L1.2(a), the base offense level for Count 3 is 8.

(g) Pursuant to U.S.S.G. §3D1.1, Count 3 does not group with Count 1.

(h) Pursuant to U.S.S.G. §3D1.4, the offense level for Count 3 is 9 or more levels less serious than the offense level for Count 1 and is therefore disregarded for the purposes of the multiple count adjustment.

(i) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(j) No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

9. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and

knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken

under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for

demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney's Office for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT
UNITED STATES ATTORNEY

Date: 9/22/26 By: [signature]
Mary Melton
Amanda Morgan
Assistant United States Attorney

Date: 9/15/26 Edgar Hdz D.
Edgar Hernandez-Duron
Defendant

Date: 9/15/26

Patrick F. Nash
Attorney for Defendant